IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| YVES LANGLOIS & ANDREE LANGLOIS<br><br>    Plaintiffs<br><br>-v-<br><br>TERRY TOWN TRAVEL CENTER, INC. & CARCRAFT ADVANCED, INC.<br><br>    Defendants. | Case No. 1:19-cv-188<br><br>COMPLAINT<br><br>JURY TRIAL DEMANDED |

## INTRODUCTION

1. This action for damages arises from Terry Town Travel Center, Inc. and Carcraft Advanced, Inc. (hereinafter collectively "Defendants") concealing the damaged vehicle history and salvage title of a 2016 Spartan 44B Anthem Motor Home (hereinafter "Motor Home") before Defendant Terrytown Travel Center, Inc. (hereinafter "Defendant Terry Town") sold the Motor Home to Plaintiffs Yves and Andree Langlois on August 16, 2018.

2. The Defendants' actions, jointly and severally, violated the federal Magnuson-Moss Warranty Act, the Michigan Consumer Protection Act, the Uniform Commercial Code, and the common law, including fraud and civil conspiracy.

## JURISDICTION

3. Jurisdiction is vested in this District Court pursuant to 28 U.S.C. § 1332 (Diversity Jurisdiction), 28 U.S.C. § 1367 (Supplemental Jurisdiction), and 15 U.S.C. § 1989; the amount in controversy exceeds $50,000, exclusive of interest and costs, and therefore this District Court has jurisdiction under 15 U.S.C. § 2310(d)(3) (Magnuson-Moss Warranty Act).

4. Venue is proper in this District Court because Defendant Terry Town has its place of business in Kent County, Michigan.

5. Venue is also proper in this District Court because Defendant Terry Town purchased the Motor Home from Defendant Carcraft Advanced, Inc. (hereinafter "Defendant Carcraft") for resale in Kent County, Michigan.

6. Venue is also proper in this District Court because Plaintiffs purchased the Motor Home from Defendant Terry Town in Kent County, Michigan.

## PARTIES

7. Plaintiffs reside in Pinal County, Arizona and purchased the Motor Home for their personal use as both their primary mode of transportation and to reside in following the sale of their marital home in or around December 2018.

8. Defendant Terry Town is a corporation licensed to do business in the State of Michigan and has its principal place of business in the City of Grand Rapids in Kent County, Michigan.

9. Defendant Carcraft is a corporation licensed to do business in the State of Illinois and has its principal place of business in the Village of Orland Park in Cook County, Illinois.

10. Plaintiffs are natural persons.

11. Defendants are each a "seller" as defined by 15 U.S.C. § 2301(4) (Magnuson-Moss Act).

12. Defendants are each a "person" as defined by MCL 445.902(d) (Michigan Consumer Protection Act).

13. Defendants both engage in interstate commerce in the purchase, advertising, and sale of consumer vehicles as part of their regular course of business.

14. Defendants both regularly engage in the sale of used and new vehicles, including motorhomes and recreation vehicles such as the Motor Home sold to Plaintiffs.

## FACTUAL ALLEGATIONS

15. The Motor Home in question in this Complaint is a 2016 Spartan 44B Anthem Motor Home with the VIN #: 4VZBU1D99GC080241.

16. On or around March 2017, Progressive Insurance declared the Motor Home to be a total loss due to interior damage to the chassis caused by a fire.

17. On or around August 2017, the Motor Home was placed for auction by Copart, Inc., a corporation which has its principal place of business in Dallas, Texas.

18. On or around October 31, 2017, the Motor Home was sold at auction through Copart, Inc. for $163,000.00.

19. At the time of auction, the Motor Home was sold as junk and salvage.

20. On information and belief, the Motor Home was acquired by Defendant Carcraft.

21. On or around February 26, 2018, received a title for the Motor Home in the State of Illinois.

22. On information and belief, Defendant Carcraft and/or one of its agents or assignees made repairs to the interior of the Motor Home to cover-up the aforementioned fire damage.

23. On or around May 2018, Defendant Carcraft sold the Motor Home with an ostensibly clean title that did not reveal the vehicle's prior junk or salvage history to Defendant Terry Town.

24. On information and belief, Defendant Carcraft disclosed to Defendant Terry Town that the Motor Home had previously been junk and salvage due to a fire.

25. On information and belief, Defendan Carcraft knew or should have known Defendant Terry Town would re-sell the Motor Home in the State of Michigan.

26. Defendant Carcraft had a duty to label the Motor Home as junk or salvage on the title when it sold the Motor Home to Defendant Terry Town.

27. On information and belief, Defendant Terry Town inspected the Motor Home prior to purchasing it from Defendant Carcraft.

28. Prior to the sale of the vehicle, Defendant Terry Town advertised the vehicle across state lines through its own website and other third-party websites.

29. These advertisements originated from Terry Town's principal place of business in Kent County, Michigan.

30. These advertisements did not disclose that the Motor Home had a prior junk and salvage history.

31. Plaintiffs, relying on one or more of these advertisements, traveled from their residence in Pinal County, Arizona to Kent County, Michigan to purchase the Motor Home.

32. Defendant Terry Town expressly told Plaintiffs that the Motor Home only had prior owner despite the fact the Motor Home had passed into the hands of two or more owners since being placed into the stream of commerce.

33. Defendant Terry Town did not disclose to Plaintiffs that the Motor Home had was junk and salvage.

34. Defendant Terry Town did not disclose to Plaintiffs that the Motor Home had undergone extensive repairs for fire damage.

35. Defendant Terry Town did not disclose that the Motor Home had been in a fire or had been classified a total loss by Progressive Insurance.

36. Defendant Terry Town knew that the Motor Home was being purchased to transport Plaintiffs and to serve as home for them to reside in while they traveled.

37. Defendant Terry Town expressed and implied that the Motor Home was a lightly used vehicle with one prior owner that had undergone no extraordinary damage, repairs, or had an extraordinary vehicle history due to past damage or repairs.

38. On August 18, 2018, Plaintiffs and Defendant Terry Town executed a Purchase Agreement for the Motor Home in the amount of $263,950.00.

39. Including in the price of the Purchase Agreement was an Extended Service Plan for $8,400.00.

40. Relying in good faith on the purchase of the Motor Home, Plaintiffs sold their marital residence in Pinal County, Arizona for the purpose of living in the Motor Home while they traveled the country.

41. In driving the Motor Home from Kent County, Michigan to Pinal County, Arizona, Plaintiffs immediately noticed problems with the vehicle's electric systems, including internal electronic appliances.

42. Soon thereafter, Plaintiffs noticed additional structure and mechanical problems with the Motor Home, including the flooring "blistering" up and cracks or splits in the ceiling tiles and warping on the dryer door.

43. All of this damage is consistent with the after-effects of fire/heat damage and improper repairs.

44. In an effort to address the damage, on September 10, 2018, Plaintiffs took the Motor Home to Lazydays, a motorhome repair shop.

45. Upon inspecting the vehicle, Lazydays determined that it could to address the extent of the Motor Home's damage.

46. Plaintiffs then proceeded to run a background check on the Motor Home using several publicly available databases. It was in or around September 2018 that Plaintiffs learned the vehicle had suffered catastrophic fire damage, was considered a total loss by Progressive Insurance, and later sold two or more times before Plaintiffs purchased the Motor Home from Defendant Terry Town.

47. Plaintiffs contacted Defendant Terry Town concerning the damage to the vehicle and its prior history. Defendant Terry Town refused to offer any assistance, including repairing Motor Home or refunding Plaintiffs' their money.

48. Defendant Terry Town was subsequently contacted by the Michigan State Attorney General's Office, but maintained it was not liable for any damage to the Motor Home because it had been ostensibly sold to the Plaintiffs "as is."

49. Plaintiffs' contact with Defendant Terry Town about the Motor Home's damage and history, along with the Attorney General's contact with Defendant Terry Town, satisfied

4

the noticing requirements of the Uniform Commercial Code (UCC) § 2-607(3)(a).

50. On November 12, 2018, Plaintiffs, through counsel, notified Defendant Terry Town that they desired to revoke the Purchase Agreement in accordance with UCC § 2-608.

51. In their notification, Plaintiffs informed Defendant Terry Town that they had violated the implied warranty of merchantability which is breached when a vehicle would not "pass without objection in the trade under the contract description." UCC § 2-314(2)(a).

52. Defendant Terry Town has up until the date of this Complaint failed to honor Plaintiffs' requests.

53. The Defendants in all actions and omissions as alleged knew that the representations that were made were false, or did not know whether they were true or false. Each and every representation, act or omission was done with the intent that Plaintiffs or other purchasers of the vehicle rely on it in deciding to purchase the vehicle or to take or refrain from taking action with respect to the vehicle, and was done with intent to defraud.

54. The Defendants had superior knowledge of the law when compared with the knowledge of Plaintiffs relating to assignment of titles, junk, or salvage vehicles and inspection of vehicles. The Defendants had superior knowledge of the wreck and ownership history of the Motor Home.

55. The Defendants conspired to transfer the Motor Home and the defective title to Plaintiffs or similar purchaser pursuant to the misrepresentations, conduct, and silence as alleged, with the purpose of defrauding Plaintiffs or other similarly situated purchaser.

56. Plaintiffs have suffered damages proximately caused by the conduct of the Defendants including, but not limited to, the lost value of the Motor Home, the cost of various extraordinary repairs on the vehicle, finance charges, the cost of insurance premiums, expenses for towing, expenses directly related to investigation of the history of the vehicle, the value of extraordinary efforts by Plaintiffs necessary to cover for and attempt to correct the problems with the vehicle, other costs relating to covering for the problems caused by the Defendants' conduct, severe mental pain, anguish, emotional distress, embarrassment, humiliation, and inconvenience, all of a total in excess of $263,950.00.

## COUNT I: MAGNUSON-MOSS ACT

57. Plaintiffs incorporate all other paragraphs by reference.

58. The Magnuson-Moss Act creates a private cause of action for a consumer who is damaged by the failure to comply with a "written warranty" (as defined by the Act), an implied warranty, or a service contract. *See* 15 U.S.C. § 2301 *et seq*.

59. The transaction between Plaintiffs and Defendants involved a "consumer product" as defined by the MMA. *See* 15 U.S.C. § 2301(1).

60. Defendants are both a "seller" as defined by the Act. *See* 15 U.S.C. § 2301(4).

61. The Extended Service Plan discussed *supra* is a "service contract" as defined by the Act. *See* 15 U.S.C. § 2301(8).

62. For the reasons discussed *supra*, Defendants have violated the implied warrants on the Motor Home, including, but not limited to, failing to disclose the vehicle's junk and salvage history.

63. Plaintiffs have been injured economically and personally by this violation of the Act.

64. As such, Plaintiffs are entitled to damages and equitable relief in the form of revocation against Defendants under the Act. *See* 15 U.S.C. § 2310(d)(1).

65. Plaintiffs are also entitled "to recover as part of the judgment a sum equal to the aggregate amount of cost and expenses (including attorneys' fees based on actual time expended) determined by the court to have been reasonably incurred" by the Plaintiffs. *See* 15 U.S.C. § 2310(d)(2).

## COUNT II: MICHIGAN CONSUMER PROTECTION ACT

66. Plaintiffs incorporate all other paragraphs by reference.

67. The Michigan Consumer Protection Act (hereinafter "MCPA"), MCL 445.901 et seq., prohibits unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce.

68. Defendants are both a "person" as covered under the MCPA. *See* MCL 445.902(d).

69. The transaction(s) between Plaintiffs and Defendants constitute(s) "trade and commerce" as covered by the MCPA. *See* MCL 445.902(g).

70. As already enumerated in the facts and counts contained *supra*, the Defendants have violated one or more of the following provisions of the MCPA:

    a. "Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer." MCL 445.903(1)(s).

    b. "Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is." MCL 445.903(1)(bb).

    c. "Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner." MCL 445.903(1)(cc).

    d. "Causing a probability of confusion or of misunderstanding with respect to the authority of a salesperson, representative, or agent to negotiate the final terms of a transaction." MCL 445.903(1)(m).

    e. The existence of "[g]ross discrepancies between the oral representations of the seller and the written agreement covering the same transaction or failure of the other party to the transaction to provide the promised benefits." MCL 445.903(1)(y).

    f. "Failing, in a consumer transaction that is rescinded, canceled, or otherwise terminated in accordance with the terms of an agreement, advertisement, representation, or provision of law, to promptly restore to the person or persons entitled to it a deposit, down payment, or other payment, or in the case of property traded in but not available, the greater of the agreed value or the fair market value of the property, or to cancel within a specified time or an otherwise reasonable time an acquired security interest." MCL 445.903(1)(u).

    g. "Representing that a consumer will receive a rebate, discount, or other benefit as an inducement for entering into a transaction, if the benefit is contingent on an event to occur subsequent to the consummation of the transaction." MCL 445.903(1)(w).

71. Plaintiffs have been injured economically and personally by one or more of these violations of the MCPA.

72. Plaintiffs are entitled to "actual damages or $250.00, whichever is greater, together with reasonable attorneys' fees." MCL 445.911(2).

## COUNT III: FRAUD OR MISREPRESENTATION

73. Plaintiffs incorporate all other paragraphs by reference.

74. Defendants induced Plaintiffs to purchase the Motor Home by misrepresentation of material facts and omission of material facts.

75. Defendants knew such representations to be false, or it made those representations recklessly, or Defendants had no reasonable grounds for believing those representations were true. Defendants also knew that its omissions were material and important.

76. Defendants intended to deceive Plaintiffs and intended that they or other purchasers would rely upon their representations, which they did, to their detriment, suffering damages as a result.

77. Plaintiffs are entitled to monetary damages in an amount in excess of $263,950.00, along with punitive damages should also be awarded against the Defendants.

### COUNT IV: RESCISSION FOR MATERIAL MISREPRESENTATION OF FACTS

78. Plaintiffs incorporate all other paragraphs by reference.

79. Defendants' representations and omissions concerning the Motor Home's history were false and misleading, and constitute a misrepresentation of material fact.

80. Plaintiffs justifiably relied upon the aforesaid material facts as represented or omitted by Defendants, as a result of which they agreed to purchase the Motor Home and sustained the losses and damages set forth above.

81. Had Plaintiffs known that the Motor Home had sustained significant damage and was deemed a total loss prior to their purchase, they would not have bought the Motor Home.

82. Defendants unlawfully refused to honor Plaintiffs' revocation of the sale and provide a refund of all funds paid.

83. Plaintiffs is entitled to an order rescinding their purchase of the Motor Home and requiring that Defendants return all funds Plaintiffs have paid in connection with its purchase and Plaintiffs should receive such incidental, consequential, and punitive damages as the evidence shall sustain.

### COUNT V: CIVIL CONSPIRACY

84. Plaintiffs incorporate all other paragraphs by reference.

85. Under State of Michigan law, "A civil conspiracy is a combination of two or more person, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Advocacy Org for Patients & Providers v. Auto Club Ins. Ass'n*, 257 Mich. App. 365, 384 (2003) (internal citations omitted).

86. The Defendants, which comprise two or more persons or corporate entities, jointly engaged in the tortious activity of fraud as described above.

87. As a result of Defendants' concerted activity, Plaintiffs have suffered economic damages in excess of $263,950.00.

### TRIAL BY JURY

88. Plaintiffs are entitled to and hereby respectfully demands a trial by jury on all issues so triable. U.S. Const. amend. 7; Fed. R. Civ. P. 38.

### PRAYER FOR RELIEF

89. Plaintiffs incorporate all other paragraphs by reference.

90. Due to all of the aforementioned violations of federal and state law, Plaintiffs respectfully request this District Court to grant, against all Defendants, jointly and severally, the following relief:

   a. Actual damages in excess of $263,950.00 for fraud and civil conspiracy;

   b. Punitive damages for fraud and civil conspiracy;

   c. Actual, incidental, consequential, and punitive damages for misstatement of material facts under the UCC;

   d. Statutory damages of $250.00 or actual damages pursuant to the MCPA;

   e. All costs and reasonable attorney fees pursuant to the MCPA;

   f. Actual damages in excess of $263,950.00 for violation of the Magnuson-Moss Act;

   g. All costs and reasonable attorney fees pursuant to the MCPA;

   h. Rescission of the Purchase Agreement; AND

   i. All other relief that is just and equitable.

| Dated: March 11, 2019 | Respectfully submitted:<br><br>__/s/_____<br>**Gabriel S. Sanchez** (P71261)<br>The Maul Law Group, PLLC<br>Attorneys for Plaintiff<br>2401 Camelot Ct., Suite M<br>Grand Rapids, MI 49546<br>Tel: (616) 202-2505<br>gsanchez@maullaw.com |